UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRMA CASTELLANOS FRANCO,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>    Defendant. | No. 1:21-cv-01818-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 16, 19)** |

### I.    Introduction

Plaintiff Irma Castellanos Franco ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs.[1] Docs. 16, 19, 20. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.

### II.    Factual and Procedural Background[2]

On October 9, 2019 Plaintiff applied for disability insurance benefits alleging disability as of May 2, 2019. The Commissioner denied the application initially on January 6, 2020 and on reconsideration February 28, 2020. AR 84, 90. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on April 21, 2021. AR 29–58. On June 2, 2021 the ALJ issued an unfavorable decision. AR 12–28. The Appeals Council denied review on October 29, 2021. AR 1–6.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 10 and 21.

[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, and will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial

gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of May 2, 2019.  AR 17.  At step two the ALJ found that Plaintiff had the following severe impairments: diabetes and irritable bowel syndrome (IBS).  AR 18.  The ALJ found that Plaintiff's depression and anxiety were non-severe.  AR 19.

The ALJ also found at step two that Plaintiff had a number of non-severe physical impairments including: "history of mucous cyst, polymyalgia rheumatic, headaches, atherosclerosis of aorta, tendinitis of wrist, history of carpal tunnel surgery, gastroparesis, osteoarthritis, lumbar spondylosis, knee joint pain, hypertension, history of total hysterectomy, chronic pain syndrome, internal hemorrhoids, diverticulosis, arthropathy of lumbar facet, colon spasm, history of knee surgery, obesity, migraine, and hyperlipidemia."  AR 18.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 21.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following limitations:  all "posturals" [sic] occasionally; no climbing ladders, ropes, or scaffolds; no concentrated exposure to cold, vibration, or hazards such as unprotected heights and moving mechanical parts; must have restrooms located at the worksite.  AR 21–24.

At step four the ALJ concluded that Plaintiff could perform her past relevant work as a pharmacy technician as generally performed. AR 24. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged disability onset date of May 2, 2019. AR 25.

## V. Issues Presented

Plaintiff asserts two related claims of error: 1) the ALJ failed to adequately develop the record with <u>mental</u> health opinion evidence from a consultative examiner; and 2) the ALJ failed to adequately develop the record with <u>physical</u> health opinion evidence from a consultative examiner. MSJ. at 11–16, Doc. 16.

### A. Failure to Develop the Record

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most you can still do despite your limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The ALJ's duty to further develop the record is triggered when the evidence is ambiguous or inadequate for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150. A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

### 2. Analysis

#### a. Mental Impairments

At step two the ALJ found Plaintiff's depression and anxiety to be non-severe. AR 19. Despite the distinct meaning of "severe" in common parlance, the step two "severity" threshold is not high. Rather, step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is not "severe" only if it amounts to a slight abnormality with no more than a minimal effect on an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922; *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

"Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. 20 C.F.R. § 404.1522, 416.922.

Plaintiff's argument begins with the contention that "The ALJ's finding of non-severity as to Plaintiff's mental impairment was improper in light of the inadequate record—namely, the

absence of a functional assessment from an examining or treating source." MSJ at. 12. Similarly, Plaintiff explains later that "The ALJ needs some form of guidance from a health care professional, specifically as to the impact those impairments had on Plaintiff's ability to work on a function-by-function basis." *Id.* at 14.

Although Plaintiff extensively cites dicta from unpublished cases emphasizing the importance of a treating or examining opinion (which accounted for a significant portion of Plaintiff's five-page argument), there is no requirement that an ALJ must obtain an examining opinion in every case before rendering an RFC determination. Such a rule would tend to contravene established circuit precedent that the RFC need not mirror any particular opinion, and would directly contravene the regulations that provide the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case. *See* 20 C.F.R. § 404.1519a; *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

In short, an ALJ is not required as a matter of law to obtain a functional opinion from an examining source. As for the reason Plaintiff feels such was warranted in this case, Plaintiff's fact specific discussion is quite limited. Plaintiff emphasizes one examination on June 6, 2019 with Dr. Patel at which Plaintiff noted symptoms of worry, restlessness, hypervigilance, depressed mood, anhedonia, crying spells, and decreased concentration, symptoms which had worsened in recent months and interfered with her work performance. AR 275–76. She was prescribed Effexor and told to follow up in four weeks. *Id.* Plaintiff emphasizes the mental status examination findings of psychomotor retardation, tearfulness, depressed and anxious mood. AR 277–78.

As Plaintiff acknowledges however, she was also noted to have fair attention and concentration. *Id.* As the ALJ noted, Plaintiff also had normal speech, good insight, good judgment, good impulse control, intact recent memory, and intact remote memory. *Id.* Further, the

ALJ noted a November 19, 2019 follow-up at which Plaintiff reported mild to moderate symptoms which were less severe than before, and upon mental status examination she was similarly noted to have normal mood and affect, normal behavior, normal judgment, and normal thought content. AR 20. The ALJ noted similar mental status examination findings and the absence of significant abnormalities at a follow-up in December of 2020, and noted that Plaintiff's most recent medication list reflect she was no longer taking psychotropics. *Id.* The ALJ found the record reflected substantial improvement in her condition and warranted a finding of no more than mild limitations in the areas of: understanding, remembering or applying information (no limitation); social interaction (no limitation); concentration, persistence and pace (mild limitation); and adapting or managing one's self (mild limitation). *Id.*

The ALJ acknowledged the findings Plaintiff emphasizes as to psychomotor retardation, tearfulness, depressed mood, and anxious mood, but those findings do not strongly suggest more than mild functional limitations. It is accepted law that if the evidence could reasonably support two conclusions the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

Plaintiff also emphasizes her global assessment of functioning (GAF) score of 41-50, which Plaintiff contends indicated moderate impairment. MSJ. at 13 (citing AR 278). As noted in the resource Plaintiff cites however, "A GAF score in the range of 51 to 60 is indicative of moderate symptoms, or moderate difficulty in social, occupational, or school functioning."[3] Plaintiff's GAF score was not in the range of 51-60; it was in the range of 41-50. AR 278.

As to the findings of the state agency psychiatric consultants, Drs. Ikawa and Sen, Plaintiff observes that the ALJ found them persuasive and relied upon said findings in support of the non-

---

[3] Moos, R. H., McCoy, L., & Moos, B. S. (2000). Global assessment of functioning (GAF) ratings: Determinants and role as predictors of one-year treatment outcomes. *Journal of clinical psychology*, *56*(4), 449-461.

severity finding (AR 24) but contends, that "the ALJ did not account for the mild limitations that both assessed in Plaintiff's ability to concentrate, persist, or maintain pace and her ability to adapt or manage herself." MSJ at 13 (citing AR 24). The point is unclear. The ALJ mirrored the findings of Drs. Ikawa and Sen, assessing mild limitations in concentration/persistence/pace and mild limitations in adaptation/self-management. AR 20. Further, those mild limitations do not support a finding of severity. An impairment causing no more than mild limitations in any area of mental functioning is generally considered a non-severe impairment. 20 C.F.R. § 416.920a(d)(1).

Plaintiff also emphasizes her testimony that she experiences crying spells once or twice in a week and isolates herself from others during those times. AR 45-46. Granted, if credited as true, this testimony would support as least some degree of social interaction limitations, whereas the ALJ found no social interaction limitations. This testimony is not necessarily inconsistent with the medical evidence which indeed showed depressed mood and tearfulness, despite Plaintiff's self-reported significant improvement with treatment, despite the other mental status findings within normal limits, and despite her discontinuation of medication, none of which refuted the notion that she had these crying spells and periods of self-isolation.

But one to two isolated crying spells per week and associated self-isolation of unspecified duration does not strongly support more than mild limitations in social interaction. Again, mild limitations are generally not indicative of a severe mental impairment. 20 C.F.R. § 416.920a(d)(1). Thus any error in failing to assess mild social interaction limitations would be harmless. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."

Plaintiff also emphasizes her testimony that she has difficulty even concentrating long enough to read a piece of mail. AR 47. If credited, this would assuredly support more than mild

limitations in concentration. But the ALJ had no obligation to credit the testimony given the benign mental status examination evidence (including fair concentration and attention, AR 278), given that Plaintiff reported significant improvement after treatment with Effexor, and given that the most recent medication list showed she was off of psychotropics (*see* AR 233, listing only a cholesterol medications of April 29, 2021), as noted by the ALJ and discussed above.

Thus, there is no basis to conclude that the ALJ had an obligation to further develop the record with a consultative *psychiatric* examination.

### b.   **Physical Impairments**

Plaintiff's second argument spans two paragraphs. MSJ at 16. The first reads as follows:

> The ALJ's physical RFC is unsupported by substantial evidence for the same reason. Here, the ALJ rejected the only medical opinion evidence as to Plaintiff's physical functioning abilities—that of the non-examining, non-treating state agency physical consultants. (AR 24). Both of these state agency consultants found Plaintiff capable of performing medium exertional work at a reduced range. (AR 23). However, the ALJ assessed these opinions as "not entirely consistent" and instead assessed Plaintiff with an RFC for light exertional work. (AR 21, 23). Notably, the ALJ reached this RFC without ordering a physical consultative examination or otherwise providing a narrative bridge between the RFC and the evidence of record. (AR 21, 23). Based on the case law cited above, the evidentiary gap left by the ALJ's treatment of the only physical functional opinions of record triggered his duty to develop the record with a consultative examination.

The fact that the ALJ assessed an RFC at a lower exertional level (light) than the state agency consultants assessed (medium), did not create error and was not adverse to Plaintiff's interests. Moreover, it does not render the RFC unsupported, and does not support a basis for remand.[4] Further, the ALJ was not required to obtain a consultative examination having decided

---

[4] Nor is it true that this assessment was the ALJ "according the claimant the utmost benefit of the doubt," as the ALJ stated on three occasions and which Defendant emphasizes at length. As is always the case, at the time the ALJ wrote the decision the ALJ was already informed of the Vocational Expert's hearing testimony that an individual with Plaintiff's RFC for light exertional work with the identified limitations could perform Plaintiff's past work as a pharmacy technician as generally performed. Thus, the ALJ's decision to select a light exertional RFC did not give Plaintiff the "benefit of the doubt." It resulted in a non-disability determination at step four as the ALJ was aware it would. The RFC is not simply one undifferentiated input in the disability algorithm, the results of which the ALJ cannot predict until the end of the five-step sequential analysis. The RFC predictably dictates the outcome in the

to reject the state agency consultants' opinions. The ALJ's task in formulating the RFC is not to choose between competing opinions. The RFC need not mirror any particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3).

In the second paragraph of the two paragraph argument, Plaintiff cites a variety of cases none of which state that the law is otherwise. Plaintiff's explanatory parentheticals appended to these citations reflects only the unremarkable fact that the court did in fact remand for the ALJ to obtain a consultative examination, which is not uncommon when the record is in fact ambiguous or inadequate for adjudication. Under those circumstances the ALJ's duty to further develop the record is indeed triggered. *Mayes*, 276 F.3d at 459–60.

Here, Plaintiff offers no fact-specific analysis as to why this case is analogous to the cited cases (other than the lack of a functional opinion from an examining source), or why the medical evidence is ambiguous, inadequate for adjudication, or unsusceptible to a layperson's understanding such that the ALJ could not interpret the same and therefore should have obtained expert guidance. The only such discussion is the unexplained and unsupported assertion in Plaintiff's reply brief that the evidence was "highly technical." Reply at 4, Doc. 20.

In her factual summary, Plaintiff described various medical evidence related to numerous physical impairments. The ALJ acknowledged the same, including mucous cyst, polymyalgia rheumatic, headaches, atherosclerosis of aorta, tendinitis of wrist, history of carpal tunnel surgery, gastroparesis, osteoarthritis, degenerative changes, lumbar spondylosis, knee joint pain, hypertension, history of total hysterectomy, chronic pain syndrome, internal hemorrhoids, diverticulosis, arthropathy of lumbar facet, obesity, colon spasm, history of knee surgery, migraine, and hyperlipidemia. AR 19. Importantly, the ALJ noted that neither the claimant nor her attorney

majority of cases. The ALJ's discussion about "the benefit of the doubt" may have been nothing more than attempt to give the reader the impression that the decision was balanced and empathetic to Plaintiff's condition.

alleged that the majority of these were severe, and the ALJ separately explained the reasons for finding no support in the record for severe physical impairments beyond diabetes and IBS. *Id.*

In regard to Plaintiff's lumbar spine facet arthropathy, shoulder impingement, polymyalgia rheumatica, and anxiety, among others (treated variously with epidurals, bursa injections, benzodiazepines, and opioids, *see, e.g* AR 311, 315), it was Plaintiff's responsibility to choose which impairments to focus on at the administrative level (or all of them)[5] and how to frame the claim of error on appeal. To the extent Plaintiff disputes the step-two non-severity finding, or more generally disputes the sufficiency of the RFC to account for her impairments, Plaintiff needed to squarely address the ALJs findings and explain why they are unsupported. The argument here concerning failure to develop the record did not accomplish that task.[6]

Further, Plaintiff's suggestion that the records are simply too technical for any a layperson to interpret (including the ALJ, counsel, or the Court), and that a consultative examination was therefore required, does not state a basis for remand as it simply avoids and overlooks Plaintiff's obligation to provide a fact specific analysis.[7] For example, it would be well within a layperson's expertise to canvass the medical evidence related to her common orthopedic conditions and highlight pertinent findings such as deficits in strength and range of motion that might support her alleged exertional limitations.

In the absence of any fact-specific analysis of the evidence concerning her physical impairments, or any critique of the ALJ's findings about the same, Plaintiff's argument ultimately

---

[5] Having 25 distinct diagnoses is certainly not an enviable problem, and it is not lost on the Court that it was a tall task to address all (or even most) of those diagnoses, the associated medical records, and frame the claim of error on appeal.
[6] *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted). *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling").
[7] *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

rests on the premise that, as a matter of law, an ALJ must either adopt one of the existing medical opinions in the record or otherwise obtain a new one--but is categorically barred from independently reviewing medical evidence (particularly highly technical evidence) and translating the same into functional terms. [8] Again, both propositions are contrary to prevailing law. *See* 20 C.F.R. § 404.1519a (stating that the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case); *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015), ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

Therefore, there is no basis here to conclude that the ALJ had an obligation to develop the record with a consultative *physical* examination.

**VI.   Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Irma Castellanos Franco.

IT IS SO ORDERED.

---

[8] Although there are no clear parameters circumscribing the ALJ's discretion to independently interpret medical evidence, some courts have found that an ALJ errs in independently interpreting medical evidence when it involves: 1) review of raw medical data such as complex imaging findings or laboratory testing results, 2) worsening of underlying impairments, or 3) development of novel impairments. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill,* No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . ."); *Stevenson v. Colvin*, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (holding that the ALJ erred in adopting the functionality opinion of a non-examining state agency physician, an opinion which pre-dated "plaintiff's treating records regarding the progression of his spinal impairments, which were developed after the date of Dr. Pancho's opinion."). None of these issues appear to be implicated here.

Dated: **December 12, 2023**             **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE